UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CHOICE CONSTRUCTION, INC., | Case No. 2:12-cv-00192-MMD-PAL |
| Plaintiff, | |
| v. | ORDER |
| JMR CONSTRUCTION CORPORATION, et al., | (Defendant JMR's Motion to Stay–dkt. no. 19; Defendant GAIC's Joinder to JMR's Motion to Stay–dkt. no. 21) |
| Defendants. | |

## I.    SUMMARY

Before the Court is Defendant JMR Construction Corporation's **Motion to Stay** (dkt. no. 19), which Defendant Great American Insurance Company joins (dkt. no. 21). For the reasons set forth below, the Court grants JMR's motion and denies GAIC's motion.

## II.    BACKGROUND

On or about June 26, 2007, Defendant JMR Construction Corporation ("JMR") entered into a contract with the United States Army Corps of Engineers ("COE" or "government") for JMR to perform construction services as the general contractor for the BRAC Aircraft Maintenance Shop Facilities at Nellis Air Force Base in Las Vegas, Nevada (the "prime contract").  Defendant Great American Insurance Company ("GAIC") issued a surety on behalf of JMR as principal in July 2007.

On or about August 29, 2007, Plaintiff Choice Construction, Inc. ("Choice") entered into a subcontract agreement (the "subcontract") whereby Choice agreed to complete certain electrical work for the BRAC project.

On August 13, 2007, COE issued JMR a Notice to Proceed, setting an initial completion date for October 6, 2008.  JMR exceeded this deadline by 333 days.  COE excused only 59 days of the 333 day overrun, and withheld $59,976 in liquidated damages from JMR.  (Dkt. no. 19 at ¶ 4.)  JMR blames the government for the delayed completion and filed a lawsuit, *JMR Construction v. United States*, No. 1:11-cv-187, in the Court of Federal Claims against COE to recover damages and associated monetary costs under the Contract Disputes Act, 41 U.S.C. §§ 601-613.  (Dkt. no. 19-4.)[1]

On January 6, 2012, Choice sued JMR and GAIC in Nevada's Eighth Judicial district for failure to compensate Choice the full amount agreed upon in the subcontract. The complaint also alleges that GAIC violated Nevada's Unfair Claims Practices Act, NRS 686A.310, because it failed to investigate Choice's Miller Act claim against JMR as required under the act.[2]  GAIC timely removed to this Court under its diversity jurisdiction.  (Dkt. no. 1.)  JMR filed a counterclaim alleging that if the delays in the BRAC project were not caused by the government, Choice was the responsible party. (Dkt. no. 19-5 at 7-13.)

III.   **DISCUSSION**

    A.   **Legal Standard**

The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for

---

[1] Before filing the lawsuit against COE, JMR submitted a claim in the form of a Request for Equitable Adjustment to the contracting officer of COE.  On March 25, 2010, the contracting officer issued a final decision rejecting JMR's claim.  (Dkt. no. 19 at ¶ 5).

[2] The Miller Act "requires a general contractor on a federal construction project to furnish a payment bond 'for the protection of all persons supplying labor and material in the prosecution of work provided for in [the] contract.'"  *U.S. for Use & Benefit of Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1205 (9th Cir. 2002) (citing 40 U.S.C. § 270a(a)(2)).

itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55.   There is no requirement that "before proceedings in one suit may be stayed to abide the proceedings in another[] the parties to the two causes must be shown to be the same and the issues identical." *Id.* at 254.

## B.    JMR's Motion to Stay

JMR seeks to stay this proceeding pending resolution of the Federal Claims action pursuant to Section 11.4 of the contract and this Court's inherent authority.

### 1.    Staying the Action Pursuant to the Subcontract

JMR argues that Section 11.4 of the subcontract requires staying this proceeding. The provision states:

> in the event the provision for resolution of disputes between the Contractor and the Owner contained in the Subcontract Documents do not permit consolidation or joinder with disputes of third parties, such as the Subcontractor, resolution of disputes between the Subcontractor and Contractor involving in whole or in part disputes between the Contractor and the Owner shall be stayed pending conclusion of any dispute resolution proceeding between the Contractor and the Owner.

The parties do not present evidence regarding why Choice could not have been joined in the Claims Court action or why the two cases could not have been consolidated.  In fact, JMR's counsel conceded during oral argument that one reason for not joining Choice was to preserve JMR's argument that the COE was the sole cause of the delay in support of JMR's Federal Claims action.  Section 11.4 of the subcontract therefore does not apply to provide an express contractual basis for staying this action.

### 2.    Staying the Action Pursuant to the Court's Inherent Authority

On balance, the competing interests of the parties favor staying the proceedings. First, the COE action and JMR's counterclaim are so inter-related that there is a risk of inconsistent judgments if this proceeding is not stayed.   Second, the balance of the equities favors staying the proceedings.

///

1

               **a.**      **This Action is Related to the Claims Court Proceeding**

2          JMR argues that this action and the Federal Claims action are related because, in

3  its counterclaim, it argues that if the Federal Claims court determines that the

4  government is not responsible for the contract delay and resulting damages, then JMR

5  alleges that Choice is responsible.  Therefore the viability of JMR's counterclaims, or the

6  very fact of JMR raising the counterclaims in this case at all, depends on the outcome of

7  the Federal Claims action.

8          Choice counters that the two actions are not related; that this is a simple breach

9  of contract claim.  Choice points to JMR's requested damages in the COE action and

10  asserts that they "relate to claims for added contract value, not for contract balance as

11  Choice seeks from JMR[,]" and that therefore "JMR has been fully paid for Choice's

12  [w]ork" on the BRAC project.  (Dkt. no. 24 at 8.)  If this is the case, then staying this

13  matter is not necessary because the COE action and this action are not sufficiently

14  related for the purposes of a stay.

15          Choice is correct that its claims against JMR are simple breach of contract claims,

16  unrelated to JMR's action against the government.  However, JMR's *counterclaim* in this

17  case is inherently related to its claims in the Federal Claims Court.  There, JMR argues

18  that the government is solely responsible for the delay, and must compensate JMR

19  accordingly.  Here, JMR argues that if the government was not responsible for the

20  delays, Choice was responsible.  The nature of the Federal Claims lawsuit further helps

21  to demonstrate why the two cases are inextricably related.  JMR's claims against the

22  government concern *Eichleay* damages under the Contract Disputes Act, 41 U.S.C. §

23  601-613.  These damages involve a specific formula used to calculate how much the

24  government owes a contractor.  *See Charles G. Williams Const., Inc. v. Sec. of the*

25  *Army*, 326 F.3d 1376, 1379 (Fed. Cir. 2003).  To prove *Eichleay* damages, the contractor

26  must first prove that there was a government-caused delay to contract performance that

27  was not concurrent with a delay caused by the contractor or some other reason.  *P.J.*

28  *Dick v. Sec. of Veteran's Affairs*, 324 F.3d 1364, 1370 (Fed. Cir. 2003).  Because of this,

only if the government prevails against JMR will JMR's counterclaims be cognizable here.

Moreover, principles of judicial economy and a desire for consistency in judicial decision-making support staying this action.  If JMR prevails against the government, because of the nature of *Eichleay* damages, it could not pursue its counterclaim against Choice in this case.  However, if the Court does not stay this action, there is the possibility of inconsistent judgments.  This could happen were the Claims Court to hold the government solely responsible for the delays and this Court to hold that Choice was responsible for the delays.  Should this occur, Choice would likely file a new case after the resolution of the Claims Court decision to attempt to recover the damages it paid JMR.  Such a lengthy chain of events would result in duplicative discovery, inconsistent judgments, and delayed verdicts.  Staying this action until the resolution of JMR's suit against COE is universally beneficial in light of these concerns.

### b.   The Balance of Hardships Favors Staying this Proceeding

Second, the balance of hardships favors staying this lawsuit.  While it is true that Choice's potential recovery will be delayed by this decision, Choice foresaw and agreed to a potential delay such as this one when it signed the subcontract.  Although the automatic stay provision, Section 11.4, is inapplicable here, the parties did agree that Choice's claims against JMR may be stayed in certain circumstances so Choice knew the potential risks if disputes were to occur as it did here.  Moreover, in Sections 6.4 and 6.5.2 the parties contemplated a stay in any proceeding involving a subcontractor and the contractor when the contractor has also sued the owner.  Section 6.4 holds that "the Subcontractor shall be liable to the Contractor for liquidated damages . . . to the same extent the Contractor shall be liable to the Owner."  (Dkt. no. 24-2.)  Here, it has yet to be determined to what extent JMR is liable to the government – that issue is currently in front of the Claims Court.  But inherent in Section 6.4's requirement that Choice pay JMR whatever liquidated damages JMR owes the government is the requirement that the

1    parties must wait until those damages are determined before JMR may request those

2    damages from Choice.

3           Further, Section 6.5.4 of the subcontract requires that

4           In the event of any dispute or claim between Contractor and Owner which
            directly or indirectly involves the work required to be performed by
5           Subcontractor . . . Subcontractor agrees to be bound by the terms of the
            Owner-Contractor Agreement and by all decisions, findings, or
6           determinations made hereunder, whether by . . . administrative agency or
            court of competent jurisdiction . . . If any dispute or claim is prosecuted or
7           defended by Contractor, and Subcontractor is not directly a party or litigant,
            Subcontractor agrees to cooperate fully with Contractor and to furnish all
8           documents, statements, witnesses, and other information required by
            Contractor for such purpose . . .

9

10   (Dkt. no. 24-2 at 14.)   In the plain terms of the contract Choice agreed to be bound by

11   any decision in the Claims Court proceeding and to fully cooperate with JMR in that

12   proceeding.   To that end, Choice must wait for a resolution in that proceeding before

13   proceeding with its claims here.

14           **C.     Choice's Request for Discovery**

15           Choice requests that before ruling on this motion, the Court should allow it to

16   engage in limited discovery to determine whether JMR's claims against the government

17   are related to Choice's claims against JMR.   However, the evidence Choice asserts it

18   would collect in discovery relate to the underlying merits of its lawsuit against JMR and

19   JMR's counterclaims.   It does not relate to the critical question in this Motion: whether

20   this lawsuit and JMR's lawsuit against the government are related.

21           Choice asserts that JMR has refused to agree to an accounting to show how

22   much of the amount already paid by the government was allocated for Choice's work on

23   the BRAC project.   But whatever those damages may be, they relate to the merits of

24   Choice's underlying breach of contract claim.   Obtaining an accounting of those figures

25   will not help Choice demonstrate that this action and JMR's Claims Court lawsuit are

26   unrelated.   Further, at oral argument Plaintiff's counsel stated that he would like to

27   ///

28   ///

6

1   conduct discovery regarding which party caused the delay on the BRAC project.[3]  Yet

2   with this request, Plaintiff essentially concedes that this case is related to JMR's suit

3   against COE, because Choice admits that it must conduct discovery regarding the issue

4   of delay on the BRAC project for this case, and delay is the central issue in the Claims

5   Court action.

6       For these reasons, the Court determines that Choice's request for limited

7   discovery in this case is denied.

8       **D.   GAIC's Joinder**

9       GAIC argues that Plaintiff's Nevada's Unfair Claims Practices Act, NRS 686A.310,

10   should be stayed for many of the same reasons given by JMR regarding Plaintiff's breach of

11   contract claims.  However, Plaintiff's claims against GAIC are wholly different and unrelated

12   to JMR's suit against COE.  Plaintiff alleges that GAIC had a duty to investigate and affirm

13   or deny Choice's claim against JMR within a reasonable time after having received

14   Choice's claim, and that because it did not, Choice did not file a Miller Act complaint

15   within the required timeframe.  This has nothing to do with the inter-related breach of

16   contract claims involving Choice, JMR, and COE.

17       GAIC's other arguments as to why Plaintiff's NRS 686A.310 claim should be stayed

18   are likewise unavailing.   First, GAIC argues that a surety is entitled to assert any defenses

19   personal to the principal.   Even if that is the case, it is of no consequence because JMR

20   does not raise any defenses to Choice's NRS 686A.310 claim as Choice does not allege

21   that JMR violated the act.  Second, GAIC argues that Choice's Unfair Claims Practices

22   allegation raises a difficult and unanswered question of state law—whether NRS 686A.310

23   extends to the surety context.  Because of this, GAIC contends that the Court should abstain

24   from deciding Plaintiff's claim against it under *Colorado River* abstention principles.  *See*

25   ///

26   _____

27       [3] Plaintiff's counsel stated that in discovery, he would "inquire as to this 400
    megahertz equipment [the electrical equipment Choice installed on the BRAC project],
28   what the delays – the real delays were on that."

7

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976).[4] Yet in this argument GAIC asks for a different type of relief than JMR on distinct grounds. Such an unrelated request in a joinder motion is improper. Because of this, and because the Court finds no other reason to stay the proceeding against GAIC, the Court denies GAIC's motion.

## IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant JMR's Motion to Stay is GRANTED. The proceedings against Defendant JMR are stayed until the Federal Claims Court issues a final decision in *JMR Construction v. United States*, No. 1:11-cv-187. The Court instructs Defendant JMR to file status reports regarding the progress of *JMR Construction v. United States* with this Court every three months. The Court will revisit this Order once discovery is completed in that case.

IT IS FURTHER ORDERED THAT Defendant GAIC's Motion to Stay is DENIED.

ENTERED THIS 16th day of July 2012.

_____
UNITED STATES DISTRICT JUDGE

---

[4] Colorado River abstention is appropriate in only "rare circumstances," and when there are parallel state or federal proceedings involving the same parties and same issues. *See Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coop., Inc.*, 48 F.3d 294, 297 (8th Cir. 1995). This is not such a case, because the Federal Claims matter does not concern Nevada surety law, nor are GAIC or Choice parties to that proceeding. Rather, abstention under *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959), is the applicable abstention doctrine when a federal court refrains from exercising federal jurisdiction because a case raises "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Polygon Ins. Co., Ltd. v. Honeywell Int'l Inc.*, 143 F. Supp. 2d 211, 213-14 (D. Conn. 2001) (discussing when Thibodaux abstention is proper).